IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MARIA PEREZ, INDIVIDUALLY AND AS NEXT FRIEND TO A.G., A MINOR<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN EXPRESS INC., AND THOMAS ROBERSON,<br><br>Defendants. | §§§§§§§§§§§§§<br><br>CIVIL ACTION NO. 5:21-cv-829 |

## ORIGINAL COMPLAINT

Plaintiff Maria Perez, individually and as Next Friend to A.G., a minor (collectively referred to herein as "Plaintiffs"), by and through undersigned counsel, files this Original Complaint against Defendants Western Express Inc., and Thomas Roberson (collectively referred to herein as "Defendants"), and for cause of action will show:

### I.   JURISDICTION AND VENUE

1. Subject Matter Jurisdiction in the Court is proper on the basis of diversity of citizenship. Plaintiffs are residents of Texas. Defendant Western Express Inc. ("Defendant Western Express") is a corporation located in Tennessee and incorporated under the laws of the state of Tennessee. Defendant Thomas Roberson ("Defendant Roberson") is a natural person, and resident of the state of Missouri. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2. Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. 1391(b).

## II. PARTIES

3. Plaintiff Maria Perez ("Plaintiff Perez") is a natural person residing at 2357 Yellow Jacket Lane, Austin, Texas 78741.

4. A.G. is a natural person residing at 2121 Burton Drive, Apartment 110-A, Austin, Texas 78741.

5. Defendant Western Express is a foreign corporation incorporated under the laws of Tennessee and doing business in Texas. Defendant Western Express may be served with process by serving its registered agent, Roland M. Lowell, at 7135 Centennial Place, Nashville, Tennessee 37209-1033.

6. Defendant Roberson is a natural person residing at 358 Private 2014 Road, West Plains, Missouri 65775. Defendant may be served with process at his residence listed above, or wherever he may be found.

## III. FACTS

7. On or about June 6, 2020, Plaintiffs were traveling southbound in Plaintiffs' 2004 Lincoln Aviator on IH 35 around reference marker 193 in New Braunfels, Texas.

8. Plaintiff Perez was driving her car in a reasonable and prudent manner and was exercising ordinary care for her safety and those around her at all times relevant herein.

9. At the same time, Defendant Roberson was driving a 2018 International Industries tractor-trailer southbound on IH 35 around reference marker 193 in New Braunfels, Texas.

10. Defendant Roberson attempted to merge right and struck the side of Plaintiffs' vehicle.

11. At the time of the collision, Defendant Roberson was operating his vehicle in the scope of his employment with Defendant Western Express.

12. As a direct and proximate result of Defendant Roberson's collision into Plaintiffs, Plaintiffs suffered harms and losses in an amount to be determined at trial.

### IV. COUNT 1 – NEGLIGENCE OF DEFENDANT ROBERSON

13. Plaintiffs replead the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

14. At all times relevant herein, Defendant Roberson was operating a commercial motor vehicle transporting property in interstate commerce.

15. In order to undertake such actions, Defendant Roberson is required to have, at a minimum, the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

16. The safe operation of commercial motor vehicles requires specialized knowledge, skill, and additional training not necessary for the safe operation of passenger vehicles because:

    a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

    b. commercial motor vehicles are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;

    c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory; and

        d.      commercial motor vehicles pose more of a risk of causing injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

17. In order to undertake the safe operation of a commercial motor vehicle, drivers such as Defendant Roberson must have knowledge and skills in many areas, including the following:

        a.      the procedures for safe vehicle operation;

        b.      the proper procedures for performing basic maneuvers such as changing lanes;

        c.      the principles and procedures for proper communications and the hazards of refusing to signal properly, including signaling intent and communicating presence; and

        d.      the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow.

18. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the well-known danger of refusing to observe traffic conditions and merging or changing lanes without first ensuring that the merge or lane change can be made safely.

19. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that refusing to observe the condition of traffic and merging or changing lanes without first ensuring that the merge or lane change can be made safely, could cause a collision and harms and losses.

20. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the foreseeable dangers of refusing to observe traffic conditions and merging or changing lanes without first ensuring that the merge or lane change can be made safely.

21. Defendant Roberson owed duties of ordinary care to Plaintiffs and other motorists on the roadway at all times relevant herein. Defendant Roberson's conduct as outlined above breached those duties through various acts and/or omissions, including the following, each of which singularly or in combination with others, constitute acts of negligence that were a direct and proximate cause of the occurrence in question and the resulting injuries or damages set forth herein:

    a. maintaining an unsafe distance from other cars;

    b. keeping an improper lookout;

    c. traveling at an unreasonable speed given the circumstances;

    d. making an untimely and improper application of his brakes;

    e. exhibiting inadequate driver attention;

    f. driving distracted;

    g. taking improper evasive actions to avoid the collision;

    h. refusing to observe traffic conditions;

    i. improperly communicating his presence;

    j. refusing to properly manage space around his tractor-trailer; and

    k. choosing to violate safety rules

22. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs suffered severe harms and losses in an amount to be determined at trial.

## V.   COUNT 2 – *RESPONDEAT SUPERIOR*

23. Plaintiffs replead the foregoing factual allegations as if herein quoted verbatim and set forth herein at length.

24. Without waiving the foregoing, in conjunction with, additionally and/or alternatively, Plaintiffs would further show this Court that Defendant Roberson was in the course and scope of his employment with Defendant Western Express at the time of this collision.

25. Under the doctrine of *Respondeat Superior*, Defendant Western Express is responsible for Defendant Roberson's negligent acts and omissions as alleged above and Plaintiffs' resulting damages.

## VI.   COUNT 3 – NEGLIGENCE OF DEFENDANT WESTERN EXPRESS

26. Plaintiffs replead the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

27. At all times relevant herein, Defendant Western Express operated as a commercial motor carrier.

28. In return for the privilege to operate commercial motor vehicles on the public roadways, prospective motor carriers must make certain safety related certifications and verifications.

29. Motor carriers such as Defendant Western Express are required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain a United States Department of Transportation ("US DOT") number.

30. Each Form MCS-150 Defendant Western Express submitted or will submit contains a Certification Statement whereby Defendant Western Express declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations.

31. Motor carriers such as Defendant Western Express are required to submit a Form OP-l to the Federal Motor Carrier Administration in order to gain interstate operating authority.

32. The Form OP-l Defendant Western Express submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that Defendant Western Express is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

33. The Form OP-l Defendant Western Express submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that it has access to, and is familiar with, all applicable US DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

34. Each Form OP-l Defendant Western Express submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, it:

   a. has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

   b. can produce a copy of the FMCSR;

   c. has in place a driver safety training/orientation program;

   d. is familiar with US DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and

   e. has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

35. Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations.

36. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

37. Reasonably safe motor carriers utilize information and training materials from industry associations and third party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

38. The safe operation of commercial motor vehicles includes practices and procedures related to observing the condition of traffic before merging or changing lanes to ensuring that the merge or lane change can be made safely.

39. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

40. Reasonably safe motor carriers never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

41. Defendant Western Express's careless, negligent, and unlawful acts directly and proximately caused Plaintiffs' harms and losses in one or more of the following particulars by refusing to use reasonable care by:


a. refusing to design, develop, and implement adequate safety management controls related to merging or changing lanes;

b. refusing to train Defendant Roberson in the well-known dangers of refusing to observe traffic conditions and merging or changing lanes without first ensuring that the merge or lane change can be made safely;

c. refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Roberson;

d. refusing to properly instruct its drivers, employees, and/or agents, specifically Defendant Roberson;

e. refusing to comply with federal and/or state regulations and industry standards, as referenced in this Petition and as developed during the discovery in this case;

f. improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically Defendant Roberson;

g. refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Roberson for compliance with company polices and/or state and federal regulations;

h. allowing Defendant Roberson to operate a commercial motor vehicle despite having knowledge of his inability to do so safely;

i. refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard;

j. refusing to utilize available technology to monitor and audit the safety performance of its drivers, including Defendant Roberson; and

      k.      negligently hiring, training, and supervising Defendant Roberson.

42. Defendant Western Express's careless, negligent, and unlawful acts were the direct and proximate cause of the collision and Plaintiffs' resulting harms and losses.

## VII.  DAMAGES

43. As a direct and proximate result of the collision making the basis of this lawsuit, Plaintiffs suffered and will in all reasonable probability continue to suffer the following actual damages, the dollar value of which exceeds the minimal jurisdictional limits of this Court:

    a. Medical treatment paid or incurred in the past;

    b. Medical treatment which will be necessary in the future;

    c. Past and future pain and suffering;

    d. Past and future mental anguish;

    e. Physical disfigurement;

    f. Past and future impairment;

    g. Partial destruction – loss of use of Plaintiff's vehicle;

    h. Diminished value of Plaintiff's vehicle;

    i. Lost wages; and

    j. Loss of past and future earning capacity.

44. Plaintiffs plead for all other damages, pecuniary or otherwise, arising out of law or equity, that they may be justly and equitably entitled to, in the wisdom of the Court.

## VIII.  PLAINTIFFS' DEMAND FOR JURY TRIAL

45. Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.     PRAYER

46.     Plaintiffs request that Defendants be cited in terms of law to appear and answer this Complaint; that upon final trial, Plaintiffs have judgments against Defendants for the amount of actual damages and for other and different amounts as they shall show proper amendment before trial; and for such other relief, at law and in equity, both general and special, to which Plaintiffs may show themselves entitled to and to which the Court believes them deserving.

Respectfully submitted,

**Zinda Law Group, PLLC**
8834 North Capital of Texas Highway
Suite 304
Austin, Texas 78759
(512) 246-2224 Office
(512) 580-4252 FAX
**Service of Documents: service@zdfirm.com**

By: _____
Cole Gumm
State Bar No. 24088963
Ryan Toomey
State Bar No. 24081178
**ATTORNEY FOR PLAINTIFFS**